# Third District Court of Appeal

## State of Florida

Opinion filed February 9, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-736
Lower Tribunal No. 20-8317
_____

**BPI Sports, LLC, etc.,**
Appellant,

vs.

**Florida Supplement LLC, etc.,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William Thomas, Judge.

The Alderman Law Firm, and Jason R. Alderman and Troy A. Tolentino; Alonso | Appeals, and Cristina Alonso (Pembroke Pines), for appellant.

Stark Weber PLLC, and Steven D. Weber, for appellee.

Before LOGUE, LINDSEY and HENDON, JJ.

LOGUE, J.

The Appellant, BPI Sports, LLC (hereinafter the "Marketer") markets and sells sports nutrition products manufactured by Appellee, Florida Supplement LLC (hereinafter the "Manufacturer"). The Marketer appeals a partial summary judgment entered for the Manufacturer in a contract dispute. The contract at issue, which the parties call an account credit agreement, required the Marketer to escrow certain funds it owed the Manufacturer and to use those funds to pay legal fees and expenses in connection with the litigation involving a third party over the Marketer's sale of the Manufacturer's products. The Manufacturer contends the agreement allows the Marketer to use the funds only for that lawsuit specified under the agreement's express terms. The Marketer, however, points to other language that it argues expands the express reference in a manner that allow it to use the escrow funds for three separate lawsuits. The trial court agreed with the Manufacturer. We affirm.

**Background**

In 2016, the parties entered into a contract whereby the Manufacturer would manufacture, and the Marketer would market and sell sports nutrition products under the Marketer's brand name. In the contract, the Manufacturer agreed to indemnify the Marketer for any liability arising from a manufacturing defect in the products.

2

On December 12, 2018, non-party ThermoLife International, LLC (hereinafter the "Third Party") sued the Marketer for false advertising and unfair competition in the United States District Court for the District of Arizona concerning the sports nutrition products (the "First Action").[1] On February 26, 2019, the Marketer sued the Third Party in the United States District Court for the Southern District of Florida for unfair competition among other claims (the "Second Action").[2]

On May 6, 2019, the Marketer sought indemnification from the Manufacturer pursuant to the 2016 agreement. On May 29, 2019, the parties entered into an Account Credit Agreement, the agreement at issue in this case. At the time, the Marketer owed the Manufacturer approximately $3.6 million in receivables. The agreement provided that the Marketer shall escrow $750,000 of that amount in its counsel's trust fund, use those moneys to fund litigation, and when litigation terminated, pay the funds remaining in the escrow account to the Manufacturer.

Thereafter, on February 25, 2020, the Third Party voluntarily dismissed the First Action in the District of Arizona. Less than five months later,

[1] This case was styled ThermoLife International, LLC v. BPI Sports, LLC, No. 18-cv-04663-SPL (D. Ariz. Dec. 12, 2018).

[2] This case was styled BPI Sports, LLC v. ThermoLife International, LLC, No. 19-cv-60505-RS (S.D. Fla. Feb. 26, 2019).

3

however, the Third Party and another third party refiled the same false advertising and unfair competition claims against the Marketer in the Southern District of Florida (the "Third Action").[3]

The Marketer moved to transfer the Third Action to the District of Arizona asserting that the claims were identical to those in the First Action. The federal court agreed finding "[the third party] initially filed these claims in the District of Arizona. The Arizona case was based on the same allegations and the same causes of action as this case, except for the newly-added FDUTPA claim." [4]

After the Third Party voluntarily dismissed the First Action, the Manufacturer demanded that the remaining balance of the moneys in the escrow account be paid to it. The Marketer refused, arguing that because the Second and Third Actions remained pending, it was not yet required to pay the escrow funds. This dispute led to the instant action. On April 14, 2020, the Manufacturer sued the Marketer seeking a declaration that it was

---

[3] This third case was styled ThermoLife International, LLC, et al. v. BPI Sports, LLC, Case No. 20-cv-61373-RS.

[4] After it was transferred to the District of Arizona, the newly filed case was assigned to the same district judge who presided over the First Action. Ultimately, the federal district court granted BPI Sports' motion to dismiss the Third Action.

entitled to the remainder of the escrow because the litigation in the First Action had terminated. The Manufacturer moved for partial summary judgment on its claim for declaratory relief.

The arguments for and against summary judgment turned on the language in the contract. The Manufacturer argued that the contract allowed the escrow funds to be used only for legal costs relating to the First Action. Pertinent here, the prefatory language in the whereas clauses of the contract defined the "Litigation" as the First Action:

> **WHEREAS**, [the Marketer] is a party to certain litigation involving products in Federal District Court for the District of Arizona, ThermoLife International v. BPI Sports LLC [the style of the First Action] (the "Litigation"), and requested [the Manufacturer] to provide indemnification to [the Marketer], including to pay for its legal fees in connection with the Litigation in the form of [the Manufacturer's] forbearance in the collection of the Receivables (the "Tender");
>
> **WHEREAS**, [the Manufacturer] has rejected the Tender;
>
> **WHEREAS**, Notwithstanding [the Manufacturer's] rejection of the Tender, [the Manufacturer] is willing to provide [the Marketer] financial assistance in connection with the Litigation upon the terms and conditions set forth herein.

The operative part of the contract, including in the provision requiring payment of the remainder of the escrow to the Manufacturer at the conclusion of the Litigation, provided:

> At the conclusion of the Litigation by any means whatsoever, to the extent to which any of the …Legal Fees Escrow has not been

5

applied to legal fees and expenses incurred in connection with the Litigation, such amounts shall, in addition to any other amounts paid hereunder, be paid to [the Manufacturer].

The Marketer, however, pointed to another provision in the operative part of the contract setting forth the permissible uses of the escrow funds which it contended used much broader language than the defined "Litigation." This language provided the escrow fund "shall be used to pay legal fees and expenses with respect to the claims by/against [the Third Party]."

On March 1, 2021, after hearing argument, the trial court entered its order granting the Manufacturer's motion for partial summary judgment. This appeal followed.

**Analysis**

We review de novo a trial court's ruling on a motion for summary judgment. Perez-Gurri Corp. v. McLeod, 238 So. 3d 347, 349 (Fla. 3d DCA 2017). A trial court's interpretation of a contract is also reviewed de novo. Id. at 350.

In arguing in support of the judgment and maintaining that the use of the escrow fund is limited to legal fees and costs stemming from the First Action, the Manufacturer notes that the whereas clauses clearly define the "Litigation" as the First Action because it specifies the style of that case in

6

which the Third Party is the plaintiff and the Marketer is the defendant, and designates the case as being filed in the Federal District Court for the District of Arizona. This definition cannot refer to the Second Action or the Third Action because those cases were filed in the District Court for the Southern District of Florida and because in the Second Action at least the Marketer is the plaintiff and the Third Party is the defendant.

In challenging this argument, the Marketer draws our attention to the provision of the operative agreement providing that the moneys in the escrow "shall be used to pay legal fees and expenses with respect to the claims by/against [the Third Party]." It maintains that this provision cannot be interpreted to apply only to the First Action because the First Action was brought <u>by</u> the Third Party against the Marketer but contained no claims <u>against</u> the Third Party. In addition, the Marketer contends that the term "claims" is broader in scope than the earlier definition given to the "Litigation."

At the time the contract was signed, however, an answer had not been filed in the First Action. Accordingly, the "claims" language easily supports a reading that the parties' acknowledged that the Marketer was reserving the right to file a counterclaim and the escrow would cover such additional claims if filed in the First Action. We find this language is not inconsistent with the

7

plain and unambiguous language defining "Litigation" to mean only the First Action.

The Marketer contends that because the definition of "Litigation" appears in the prefatory part of the contract, the broader understanding in the operative portion controls. It cites to the law that "an operative clause of an agreement prevails over the recital clause when there is a discrepancy between the two." Johnson v. Johnson, 725 So. 2d 1209, 1213 (Fla. 3d DCA 1999); Northern Trust Co. v. King, 6 So. 2d 539, 540 (Fla. 1942) ("The law appears settled that where there is a difference in the recital and covenant, the covenant will prevail.").

We find this law does not apply here for two reasons. First, as noted above, we find no discrepancy in the definition of "Litigation" and the reference to "claims." Second, this use of the term "Litigation" is not limited to the prefatory parts of the contract. The defined term "Litigation" is used in two crucial provisions in the operative part of the contract. First, it is used to set the date when the escrow must be paid to the Manufacturer: "[a]t the conclusion of the Litigation." Second, it is used to define what the moneys in escrow can be spent for—namely, "legal fees and expenses incurred in connection with the Litigation." Indeed, to read this reference to "legal fees and expenses incurred in connection with the Litigation" as co-extensive with

8

the reference to "legal fees and expenses with respect to the claims by/against [the Third Party]" resolves any potential conflict in the language of the contract.

      Affirmed.